IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**JEFFREY G.,**[1]

                        Plaintiff,                Civ. No. 6:23-cv-00283-MK

     v.                                                  **OPINION AND ORDER**

**KILOLO KIJAKAZI**, Acting
Commissioner of Social Security

                        Defendant.

---

**KASUBHAI, Magistrate Judge:**

    Plaintiff Jeffrey G. ("Plaintiff") brings this action for judicial review of the Commissioner of Social Security's ("Commissioner") decision denying his applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) under Titles II and XVI of the Social Security Act ("the Act"). This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). For the reasons below, the Commissioner's final decision is reversed and remanded for the

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental parties in this case.

Page 1 – OPINION AND ORDER

calculation and payment of benefits.

## PROCEDURAL BACKGROUND

Plaintiff's claims for SSI and DIB were denied initially and upon reconsideration. Tr. 165, 170, 177. He requested an administrative hearing and appeared before an administrative law judge (ALJ) on September 26, 2022. Tr. 51-85. In a written decision dated October 19, 2022, the ALJ denied Plaintiff's claim for benefits. Tr. 13-33. The Appeals Council denied Plaintiff's subsequent petition for review, rendering the ALJ's decision final. Tr. 1-6. This appeal followed.

## FACTUAL BACKGROUND

Born in 1980, Plaintiff was 39 years old when he applied for benefits on September 25, 2019. Tr. 249.[2] He alleged disability as of November 15, 2017, due to combined impairments of chronic pain from a spinal injury, cubital tunnel syndrome, bipolar disorder, anxiety, depression, ADHD, mania, and PTSD. Tr. 282.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149,

---

[2] "Tr." refers to the Transcript of the Social Security Administrative Record, ECF No. 10, provided by the Commissioner.

1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), which is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e), 416.945(b)–(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of November 15, 2017. Tr. 16. At step two, the ALJ determined that Plaintiff had the severe impairments of obesity, aggravating degenerative disc disease of the lumbar spine, cubital tunnel syndrome with a tear of the TFCC in his left wrist, and a mental impairment that included bipolar I disorder, post-traumatic stress disorder (PTSD), attention deficit-hyperactivity disorder (ADHD), possible mixed personality disorder, depression and anxiety. Tr. 16. The ALJ also found that Plaintiff had the non-severe impairments of IBS, sleep apnea, hypertension and heart arrhythmia, fasciculations and dysplastic toenails of the right foot, and hypogonadism but that there was nothing to show these conditions caused significant vocational limitations. Tr. 16-18.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled any listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 19-22.

Prior to step four, the ALJ determined that, despite his impairments, Plaintiff retained the RFC to perform light work with the following limitations: Plaintiff can no more than frequently reach in all directions, frequently handle, and frequently finger with the non-dominant left upper extremity. He can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. He can frequently balance, but can only occasionally stoop, kneel, or crouch, and can never crawl. He can never work in the presence of unprotected heights or hazardous machinery, and should not be required to operate a motor vehicle as part of his job duties. He can never work in the presence of concentrated exposure to extreme heat, extreme cold, dust, odors, fumes, or pulmonary irritants. He is limited to performing simple, routine, and repetitive tasks, can use judgment for that type of work, and can deal with changes in a work setting consistent with that type of work. The claimant can frequently interact with supervisors, but can only occasionally interact with coworkers and the public. Tr. 22.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work as an attorney. Tr. 30-31. At step five, the ALJ found that based on Plaintiff's age, education, work experience, and residual functional capacity, he could perform jobs that existed in significant numbers in the national economy, including marker, garment sorter and router. *Id*. The ALJ therefore concluded that Plaintiff was not disabled. Tr. 31-32.

In this appeal, Plaintiff argues that the ALJ erred by (I) failing to properly include his mental limitations in the RFC; and (II) asking a hypothetical question to the VE without including all of Plaintiff's functional limitations regarding his mental health. Pl. Br., at 1-19 (ECF 11).

# DISCUSSION

## I. Mental Limitations in the RFC

Plaintiff first argues that the ALJ failed to properly incorporate all of his credited limitations into the RFC. Specifically, Plaintiff notes that the ALJ's RFC failed to capture the full extent of Plaintiff's mental limitations as assessed by the state agency physicians. Here, state agency physicians Bruce Lipetz, PsyD, and Irmgard E. Friedburg, PhD, reviewed Plaintiff's record and opined that he was mildly limited in the mental functional area of understanding, remembering, or applying information, but had moderate limitations in the remaining three "Paragraph B" areas. Tr. 97, 107, 130, 153. The physicians also provided the following explanation for their RFC determination regarding Plaintiff's difficulties with concentration, persistence and pace:

> Over the course of his bipolar illness he'd likely been with periods where he was incapable of sustaining attention and concentration to do more than simple and repetitive tasks. He is capable of persisting to complete simple tasks throughout a normal workday/week. He would benefit from moderate production demands to control for stress as he's quite self critical and prone to anxiety. With remission of his bipolar condition, the claimant would likely improve and regain the ability to sustain complex tasks as he's been able to do in the past but he cannot do this currently. Tr. at 98, 133.

The ALJ partially credited these opinions, noting that both physicians found Plaintiff limited to "simple work," and "occasional coworker contact," which appears consistent with the record. Tr. 29. However, the ALJ did not agree with their limitation of Plaintiff having "brief public contact" and saw this is "overly restrictive given the lack of behavioral disturbances." *Id*. Consequently, the ALJ formulated an RFC limiting Plaintiff to "simple, routine, and repetitive tasks" as well as "occasional coworker contact," but also occasional interaction with the public. Tr. 22. Plaintiff argues that the ALJ committed harmful error by ignoring the production-based limitations specifically set out by the state agency physicians. Pl. Br., at 7 (ECF 11).

Page 6 – OPINION AND ORDER

The Commissioner argues that the ALJ's interpretation of Drs. Lipetz and Friedburg was not error, citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) for the proposition that when assessing the RFC, "preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary." The Commissioner then cites to 20 C.F.R. §§ 404.1512(a), 416.912(a) to argue that it is Plaintiff's burden to demonstrate the evidence shows limitations beyond those in the RFC. The Commissioner finally argues that the ALJ comprehensively reviewed the medical evidence and found that it supported a finding Plaintiff could perform a restricted range of light work. Def. Br., at 5 (ECF 15). The Court disagrees with the Commissioner's contention.

Here, the ALJ only found Plaintiff's interaction with the public unpersuasive when reviewing Drs. Lipetz and Friedburg's medical opinions. The ALJ did acknowledge and accept their opinions regarding "moderate production demands," and failed to cite any evidence discrediting such production limitations. Tr. 28. In her analysis, the ALJ first cited Dr. Lipetz's opinion, which she found to be supported by his "acknowledge[ment] [of] [Plaintiff's] longstanding history of multiple mental diagnoses, but pointed to treatment records documenting an improvement in symptoms with medication, further noting that the claimant demonstrated average intellectual functioning . . ." Tr. 28, citing Tr. 98, 111, 133-34, 156-57, 94-95, 107-08. Next, the ALJ found that Dr. Friedburg's opinion "affirmed Dr. Lipetz's initial findings," despite newly submitted medical records documenting Plaintiff's mental status through February 2021. Tr. 29, citing Tr. 126, 149.

After reviewing Plaintiff's newly submitted medical records, the Court does not agree with the ALJ that "these new records point to a generally stable level of mental function in spite of [Plaintiff's] continued subjective allegations of mental symptoms." Tr. 29. In fact, the record

shows Plaintiff's worsening and extreme mental impairments due to his bipolar, anxiety and PTSD symptoms. The ALJ first mentions Plaintiff's records from Samaritan Health Services between April and October of 2021 to conclude that "while [Plaintiff] periodically reported symptoms of anxiety and depression, he also reported good symptom relief with medication, exhibiting intact memory and attention." Tr. 29, citing to Tr. 1343, 1352-53, 1359, 1365, 1371. Though improvement with treatment is a very common reason for an ALJ to reject symptom testimony, it is error to isolate a few isolated instances of improvement in the medical record as a basis for concluding a claimant is capable of working. *Garrison*, 759 F.3d at 1017 (citation omitted). It is common for mental health symptoms to wax and wane, such that cherry-picking the record for facts that support the non-disability decision while ignoring others to paint an inaccurate picture of the record as a whole is reversible error. Applicable to this case is that "[r]eports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of [his] symptoms." *Id.* (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200-01 (9th Cir. 2008)); *see also Attmore v. Colvin*, 827 F.3d 872, 877-79 (9th Cir. 2016) (ALJ erred by finding improvement where claimant continued to have functional impairments and improvement was not sustained).

      The parts of the record the ALJ repeatedly cites to do not coincide with the patient's overall well-being as directed by *Ryan* and *Attmore*. The ALJ cites to page 1343 of the record as evidence of intact memory and attention. However, that same page also shows Plaintiff's stuttering problem (as mentioned in the 2022 hearing), "hopeless" mood, dysthymic and euthymic affect, his need to "push away [suicidal] thoughts." And though some later treatment notes mention his mood as "more stable than other points in life, calm," his anxiety and depression were still present despite substantial treatment, including psychotherapy and a Lithium prescription to combat mania. Tr.

1371, *see also* Tr. 1285-86, 1291, 1302, 1307, 1393. Plaintiff's mental health symptoms came to a head in April and May 2022, as the ALJ points out, when he demonstrated increased anxiety and poor grooming at his Corvallis Family Medicine visit. Tr. 29, citing Tr. 1648, 1674. The provider at that time noted the following for Plaintiff's psychiatry examination:

> poorly groomed, malodor in room, anxious affect, intermittent tearful, express[ed] anxiety surrounding this visit, endorsing concerns for [suicide] next winter, stutter noted but otherwise speech is appropriate in tone, volume, and content. Tr. 1648.

At the end of that report the provider also notes Plaintiff is "severe[ly] bipolar to the point where he is disabled (used to work as a lawyer prior to mental health disorders), endorses repetitive thoughts and Tourette's-like symptoms." Tr. 1650. However, the ALJ concluded that Plaintiff's increased symptoms were "merely temporary, as July 2022 records show that he was alert and pleasant, interacting normally." Tr. 29, citing Tr. 1779. This is merely one general examination note and again does not coincide with Plaintiff's overall well-being as directed by *Ryan* and *Attmore*.

The ALJ next points to more recent records to show that Plaintiff had "symptom improvement with medication, and [Plaintiff] reported generally normal activities including dating and providing caregiving services for his elderly mother." Tr. 29, citing Tr. 1922-23, 1925. However, the ALJ is again cherry-picking facts in the record. Here, the record the ALJ cites to does indeed indicate that Plaintiff had a new dating partner and helped care for his mother. Tr. 1922-23, 1925. However, those same progress notes indicate that he frequently dissociates with his dating partner and ruminates on the events in his life that triggered PTSD, has suicidal ideation, had "extreme external stress from upcoming SSDI hearing," experiences "catastrophic thinking," and that his mother's needs are becoming so great that Plaintiff met with a hospice care team for her. Tr. 1922-23, 1925, 1779. Consequently, the treatment notes the ALJ relies on do not represent

substantial evidence to support her conclusion that "Dr. Lipetz and Dr. Friedburg's proposed limitation to simple work appears to remain consistent with the record, and the undersigned incorporates this into [Plaintiff's] limitation to simple, routine, and repetitive tasks," absent any discussion of Plaintiff's production limitations due to his mental health. Tr. 29.

The Court agrees with Plaintiff's contention that the Paragraph B regulatory definitions related to pace, persistence, and production deficiencies are different than other functioning considerations, such as simple, routine, and repetitive tasks, "and would need to be addressed separately and specifically in the RFC." Pl. Br., at 12 (ECF 11). The ALJ failed to do so here. The Commissioner argues that the ALJ's RFC sufficiently accommodated Plaintiff's limitations because:

> the ALJ specifically equated the moderate limitations in the areas of "concentrating, persisting, or maintaining pace" and "adapting or managing oneself" to specific parts of the RFC including the "simple, routine, or repetitive task" portion as well as the limitation in the RFC dealing with judgment and changes in the work setting. Def. Br., at 10 (ECF 15).

The Commissioner relies on three Ninth Circuit cases where the court held the RFC determination limiting [claimant] to "simple, repetitive tasks" adequately encompassed their moderate difficulties in concentration, persistence, or pace. *See Turner v. Berryhill*, 705 F. App'x 495, 498-99 (9th Cir. 2017); *Lee v. Berryhill*, 721 F. App'x 604, 608 (9th Cir. 2017); and *Sabin v. Astrue*, 337 F. App'x 617, 621 (9th Cir. 2009). However, the case here is distinguishable because the above authority only applies if the determination is consistent with the restrictions identified in the medical evidence. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (all three cases the Commissioner cites use this rule). This is not the case here, as the determination contrasts with the restrictions identified in the medical evidence. To view Plaintiff's medical record entirely and conclude that he can do "simple, routine, or repetitive tasks" as a catch-all for his mental incapacities would be nearly unconscionable. Plaintiff has been battling suicidal thoughts, plans,

and ideations for several years. Tr. 486, 488, 498, 531, 576, 605, 641. Once a thriving attorney in the state of Oregon, the record shows Plaintiff's severe anxiety to even attend his own SSDI and divorce hearings. Tr. 1888, 1909, 1921, 1925. The record supports his severe PTSD symptoms and how they affect his daily life, including GI upset, sleep disturbance, physical dissociation throughout the day, and emotional instability. Tr. 1617, 1650, 1838, 1881, 1888, 1900, 1903, 1913. The opinions of Drs. Lipetz and Friedburg regarding Plaintiff's "moderate production limitations" only scratch the surface of his mental incapacities.

In this case, because the ALJ credited the opinions of the state agency physicians that Plaintiff was limited to moderate production demands, which included their discussion about how his anxiety and self-critical nature would impact his production, she was required to incorporate these limitations into Plaintiff's RFC. The ALJ's failure to include Plaintiff's moderate production demands into the RFC, but instead limiting him to "simple, routine, and repetitive tasks" was error, and does not reflect Plaintiff's "overall well-being and the nature of [his] symptoms." *Ryan*, 528 F.3d at 1200-01; *see also Attmore*, 827 F.3d at 877-79.

## II. Hypothetical Question to the VE

Here, the Court need not address the parties' specific arguments raised in the briefing because the Court observes *sua sponte* that the hypothetical question the ALJ posed to the VE at the administrative hearing did not contain all the limitations present in the ALJ's RFC assessment, which renders the ALJ's decision unsupported by substantial evidence as discussed previously in this Order. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001) ("An ALJ must propound a hypothetical to a VE that is based on medical assumptions supported by substantial evidence in the record that reflects all the claimant's limitations"); *see also Parker v. Berryhill*, 708 F. App'x. 316, 319 (9th Cir. 2017) ("Hypothetical questions posed to a [VE] must include all of the medical

and vocational limitations of the claimant supported by substantial evidence in the record") (citing *Osenbrock*, 240 F.3d at 1163)); *Galton v. Astrue*, No. EDCV 07-0824-DOC (JTL), 2008 U.S. Dist. LEXIS 54360, 2008 WL 2677129 at *5 (CD. Cal. July 7, 2008) ("Where a hypothetical fails to reflect each of the claimant's limitations that are supported by substantial evidence, the [VE's] answer has no evidentiary value." (*citing Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)).

Specifically, the ALJ did not include Plaintiff's RFC moderate production demand in the hypothetical question posed to the VE at the administrative hearing. *See* Tr. 22 (the ALJ finding that Plaintiff has the RFC to perform, in relevant part, "simple, routine, and repetitive tasks, can use judgment for that type of work, and can deal with changes in a work setting consistent with that type of work." (emphasis added)); *see also* Tr. 82-83 (the ALJ asking the VE if a hypothetical individual of Plaintiff's same age, education (an associates of art degree because his ability to use the law degree is not present due to the loss of his license), limitation to light work, limitation to perform simple routine and repetitive tasks, could use judgment for that type of work, and could deal with changes in a work setting consistent with that type of work, but could not perform past relevant work, but could work as a marker, garment sorter, or router)).

Consequently, because the hypothetical question the ALJ asked the VE at the administrative hearing did not contain all of Plaintiff's limitations from the ALJ's RFC assessment—specifically, Plaintiff's production demand limitation due to his mental impairments—the VE's response to the ALJ's incomplete hypothetical question had no evidentiary value. *Gallant*, 753 F.2d at 1456; *Galton*, 2008 U.S. Dist. LEXIS 54360, 2008 WL 2677129, at *5. As such, the ALJ's findings that Plaintiff can perform the marker, garment sorter, or router position, are not supported by substantial evidence in the record because the ALJ based her

findings on the VE's testimony that was provided in response to an incomplete hypothetical question.

Accordingly, the Court finds that remand is appropriate, and the only remaining question is whether remand for further proceedings or for payment of benefits is appropriate.

## REMEDY

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an immediate award of benefits. *See, e.g.*, *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Under this analysis the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even where all the requisites are met, however, a court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Garrison*, 759 F3d at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (citing *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (internal quotation marks omitted)).

Here, the first condition is met because the ALJ improperly failed to incorporate Plaintiff's mental limitations into the RFC and therefore effectively rejected the opinions of Drs. Lipetz and Friedburg. *Dominguez*, 808 F.3d at 407.

The second condition is also met. The Ninth Circuit has held that remanding for further proceedings rather than for an immediate payment of benefits serves a useful purpose where "the record has [not] been fully developed [and] there is a need to resolve conflicts and ambiguities." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal quotations and citations omitted). Here, there is no suggestion by the parties that the record is not fully developed, and the court has found no outstanding conflicts or ambiguities after a careful reading of the record.

As to the third prong of the credit-as-true analysis, the court finds that the ALJ would be required to find Plaintiff disabled on remand. Here, the ALJ determined that Plaintiff was not disabled based on a finding that Plaintiff could perform jobs requiring simple, routine, and repetitive tasks. Tr. 22. This finding was based on Vocational Expert (VE) testimony at the administrative hearing. At the hearing, the ALJ asked the VE whether a claimant with Plaintiff's RFC would be able to perform any work and asked the VE to provide a few examples. The VE answered in the affirmative, and listed the representative occupations of marker, garment sorter and router – each at a light exertional level, but also requiring specific levels of production to remain employed. Tr. 83; *see* DOT# 209.587-034; *see* DOT# 222.687-014; *see* DOT# 222.587-038; *see also* https://occupationalinfo.org/appendxc_1.html (stating that when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of

maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.)

Consistent with the ALJ's flawed RFC, the three jobs listed by the VE require specific production demands to remain sustainable, i.e., sorting garments according to their lot and size numbers recorded on tags, stamping, stenciling, tagging packages, boxes, or merchandise to indicate delivery routes, or marking and attaching price tickets to articles of merchandise. S*ee* DOT# 209.587-034; *see* DOT# 222.687-014; *see* DOT# 222.587-038. This level of production is inconsistent with Drs. Lipetz and Friedburg's limitations on Plaintiff's production capacity. Because the VE did not identify any jobs that Plaintiff could perform given his credible mental limitations, the ALJ would be required to find Plaintiff disabled when the erroneously rejected limitations are credited as true. *See* Tr. 83.

If a court concludes, as in this case, that a claimant meets the three criteria of the credit-as-true standard, the improperly discredited evidence is credited as true and remand for an award of benefits is appropriate unless "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1020–21 (citations omitted). The Commissioner argues that the ALJ provided substantial evidence supporting her RFC finding and that she was not required to include additional RFC limitations related to Plaintiff's mental impairments. Def. Br., at 11 (ECF 15). However, the record as a whole shows Plaintiff's severe mental impairments despite substantial treatment, which contradicts the findings of the ALJ. *See Garrison*, 759 F.3d at 1017.

Here, the ALJ credited competent medical evidence that Plaintiff was mentally limited in ways that significantly limit his ability to perform substantive gainful activity. As discussed above, the VE did not identify any jobs that Plaintiff could perform that accounted for moderate

Page 15 – OPINION AND ORDER

production limitations. Considering the record as a whole, the Court therefore concludes that there is no reason for serious doubt as to whether Plaintiff is disabled. *Garrison*, 759 F.3d at 1020–21 (citations omitted); *see also Revels v. Berryhill*, 874 F.3d 648, 668 n.8 (9th Cir. 2017) (explaining that where each of the credit-as-true factors is met, only in "rare instances" does the record as a whole leave "serious doubt as to whether the claimant is actually disabled") (citing *Garrison*, 759 F.3d at 1021.) Accordingly, the Court exercises its discretion and remands this case for an immediate calculation and payment of benefits.

## CONCLUSION

For the reasons stated above, the Commissioner's final decision is REVERSED and REMANDED for the immediate payment of benefits, under sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DATED this 5th day of February 2024.

s/ Mustafa T. Kasubhai<br>
MUSTAFA T. KASUBHAI (He / Him)<br>
United States Magistrate Judge